IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WAHAN KRIKORIAN,                                 :        CIVIL ACTION NO.
On Behalf of the TPS Parking Management, LLC     :        16-cv-00094-REB-MJW
401(k) Plan and On Behalf of All Other Similarly :
Situated Employee Benefit Plans,                 :
                                                 :
                        Plaintiff,               :
                                                 :
        vs.                                      :
                                                 :
GREAT-WEST LIFE & ANNUITY INSURANCE              :
COMPANY, GREAT-WEST LIFE & ANNUITY               :
INSURANCE COMPANY OF NEW YORK,                   :
GREAT-WEST TRUST COMPANY, LLC, and               :
ADVISED ASSETS GROUP, LLC,                       :
collectively d/b/a EMPOWER RETIREMENT,           :
                                                 :
                        Defendants.              :

## SCHEDULING ORDER

## I.   INTRODUCTORY STATEMENT

The parties have elected to use the form of the Court's general "Standard Scheduling

Order" (Appendix F.1) rather than the "Scheduling Order in an ERISA Action" (Appendix F.2)

because the Complaint seeks remedies for a putative class of retirement investors, and is not an

individual ERISA claim for benefits like that for which the Appendix F.2 form appears to have

been designed (*e.g.*, the F.2 form requires the filing of the administrative record, and there is no

administrative record in this case).

## II.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The initial Rule 16(b) scheduling conference was held on March 2, 2016.   The parties

are represented by the counsel listed below:

Edward C. Stewart, #23834
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879
Email: stewart@wtotrial.com

Joel S. Feldman
Mark B. Blocker
Daniel R. Thies
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-2030
Facsimile: (312) 853-7036
Email: jfeldman@sidley.com
         mblocker @sidley.com
         dthies@sidley.com

**Attorneys for Defendants,**
**Great-West Life & Annuity Insurance Company**
**Great-West Life & Annuity Insurance Company of New York**
**Great-West Trust Company, LLC**
**Advised Assets Group, LLC**

James E. Miller
Laurie Rubinow
SHEPHERD FINKELMAN MILLER
 & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile:   (866) 300-7367
Email: jmiller@sfmslaw.com
         lrubinow@sfmslaw.com

Kolin C. Tang
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

**Attorneys for Plaintiff,**
**Wahan Krikorian**

### III.   STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's claims under ERISA § 502, 29

U.S.C. § 1132, and under 28 U.S.C. § 1331 because this action arises under the laws of the

United States.

### IV.   STATEMENT OF CLAIMS AND DEFENSES

#### A.   Plaintiff:

Plaintiff was a participant in the TPS Parking Management, LLC 401(k) Plan (the

"Plan").[1]   At all pertinent times, Plaintiff asserts that Defendant, Empower Retirement,[2] acted as

a service provider for and a fiduciary of the Plan, as well as all of the Plans.   Plaintiff asserts

that Empower Retirement has entered into revenue sharing agreements and similar arrangements

("revenue sharing contracts" or "participation agreements") with various mutual funds, affiliates

of mutual funds, mutual fund advisors, sub-advisors, investment funds, including collective

---

[1] Plaintiff brings this action in a representative capacity on behalf of the Plan and a proposed class
of all other similarly situated retirement plans (the "Plans").

[2] Defendants, Great-West Life & Annuity Insurance Company ("GWL&A"), Great-West Life &
Annuity Insurance Company of New York ("GWL&A of NY"), Great-West Trust Company,
LLC ("GW Trust") and Advised Assets Group, LLC ("AAG") are collectively defined, for
purposes of Plaintiff's Complaint, as "Empower Retirement."

trusts, and other investment advisors, instruments or vehicles (collectively, "mutual funds"),
pursuant to which Empower Retirement receives revenue sharing payments (which amount to
kickbacks) for its own benefit from these mutual funds in violation of, *inter alia*, the prohibited
transaction rules of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.
§§1001, *et seq.* (*i.e.*, ERISA §§ 404 and 406(b), 29 U.S.C. §§ 1104 and 1106(b)), as well as
ERISA's fiduciary rules (*i.e.*, ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and
(B)).   Plaintiff asserts that the kickback payments at issue are essentially part of a pay-to-play
scheme in which Empower Retirement receives payments from mutual funds in the form of 12b-
1 fees, administration fees, service fees, sub-transfer agent fees and/or similar fees (the "revenue
sharing payments") in return for providing the mutual funds with access to its retirement plan
customers, including its 401(k) plan customers.   Plaintiff asserts that Empower Retirement uses
its ownership and control over separate accounts in which its retirement plan customers'
investments are placed to negotiate for the receipt of these revenue sharing payments from
mutual funds, and the revenue sharing payments have the effect of increasing the expense ratios
of the mutual funds, which expenses are deducted directly from the assets of these separate
accounts.   Plaintiff asserts that, while the revenue sharing payments are often internally
described by service providers, such as Empower Retirement, as "services fees" and
reimbursement for expenses incurred in providing services for, to, or on behalf of the mutual
funds, and deceptively characterized as such to retirement plans and their participants (thereby
concealing their true nature), the amounts of the revenue sharing payments bear absolutely no
relationship to the cost or value of any such services.   Plaintiff asserts that, as a result of its
acceptance of these unlawful payments, Empower Retirement occupies a conflicted position
whereby it effectively operates a system in which it is motivated to increase the amount of such

4

payments, while improperly requiring certain plans and/or participants who invest in mutual funds and similar investments that provide higher amounts of revenue sharing payments to incur and pay unreasonably high fees for the services provided. Plaintiff also asserts that Empower Retirement has engaged in acts of self-dealing with respect to the retirement assets of the Plans and the Class with respect to certain proprietary and/or sub-advised mutual funds and, in so doing, also has otherwise violated the prohibited transaction rules of ERISA, as well as ERISA's fiduciary rules.

Although Defendants' description of their defenses and characterization of Plaintiff's claims is replete with "high" rhetoric, courts in similar cases throughout the country have found conduct similar to that of Empower Retirement in this case to directly implicate fiduciary duties under ERISA and to violate those fiduciary duties. *See Golden Star, Inc. v. Mass. Mutual Life Ins. Co.*, 22 F.Supp.3d 7258 (D.Mass. 2014)(denying defendant's motion for summary judgment and finding that defendant was a fiduciary with respect to its receipt of revenue sharing payments); *Haddock v. Nationwide Life Ins. Co.*, Case 3:01-cv-01552-SRU (D.Conn)(settlement payment of $140 million to resolve revenue sharing class action litigation); *see also* http://classaction.kcclic.net/CaseInfo.aspx?pas=nht (same). Defendants' citation to outlier and otherwise inapplicable decisions in certain other cases below is unpersuasive.

## B. **Defendants:**

Defendants deny the allegations contained in Plaintiff's Complaint and filed an Answer and Affirmative Defenses to the Complaint on March 25, 2016. Defendants specifically deny that they were fiduciaries to the Plan or any of the Plans in connection with the activities at issue in the Complaint. Defendants also dispute that any class can be certified in this case, as numerous individuals issues predominate over any common issues.

Plaintiff's description above is long on rhetoric but short on facts. Plaintiff uses terms like "kickback" and "pay to play" to describe a common and accepted practice in the retirement services marketplace. In fact, courts have specifically held that revenue sharing is "common and acceptable investment industry practice[] that frequently inures to the benefit of ERISA plans." *Tussey v. ABB, Inc.,* 746 F.2d 327, 336 (8th Cir. 2014). The reason that it benefits ERISA plans is because the payments that service providers receive from mutual funds helps reduce the overall cost of paying for ERISA plan services and enable employers to provide 401(k) plans.

The notion behind revenue sharing is quite simple. Once a service provider like Empower Retirement determines a price for its services, the plan sponsor decides how to pay for those services. As courts adjudicating claims similar to those here have noted, there are two general ways to do so: (1) the employer can write a check to Empower, or (2) the employer can agree that the charges will be paid through revenue sharing payments from some of the investment option providers. *Leimkuehler v. American United Life,* 713 F.3d 905, 909 (7th Cir. 2013) (granting summary judgment to the service provider on the grounds that it was not a fiduciary). The revenue sharing payments are not "extra" compensation to the service provider; those payments help defray the agreed-upon compensation to the service provider.

Furthermore, the notion that the revenue sharing payments are undisclosed is hogwash. As *Leimkuehler* noted, effective in 2012, the Department of Labor has *required* service providers like Empower Retirement to make specific disclosures to plans about all types of direct and indirect compensation, including revenue sharing payments. *Leimkuehler,* 713 F.3d at 910 (citing 29 C.F.R. 2550.408b-2). As a result, not only is there mandatory disclosure of revenue sharing practices, but the specific amounts that a service provider received are disclosed in detail to the plan sponsor, whose fiduciary responsibility is to make sure the plan is not paying too much.

Plaintiff here is not claiming that the TPS Plan sponsor did not do its job and does not claim that Empower Retirement was earning too much; he is instead trying to claim that it was improper to receive those payments at all.

The facts will show that Empower's revenue sharing practices are fully consistent with the DOL's expectations, and that Empower did absolutely nothing improper. Plaintiff cannot simply use rhetoric to manufacture a claim.

## V.   UNDISPUTED FACTS

    1.     Plaintiff was a participant in the Plan, which was sponsored by his employer.

    2.     Empower Retirement was the service provider for the Plan.

## VI.   COMPUTATION OF DAMAGES

Plaintiff presently lacks information necessary to compute damages. The parties have yet to exchange initial disclosures, propound discovery, or produce documents in this action. Plaintiff believes that the amount of the revenue sharing payments at issue are likely to exceed $100 million in total, based upon the size of Empower Retirement's operations and the quantum of revenue sharing payments in similar cases involving other service providers.

Empower Retirement disputes that the actual or potential damages in this case are anywhere near $100 million. As explained above, the revenue sharing payments at issue are used to reduce the cost to plans of the administrative services provided by Great-West, and thus directly benefit plans and participants that receive services from Great-West. There is no basis to claim that amounts used to reduce plan charges and thus benefit the plans and their participants could somehow constitute damages.   The actual amount at issue, if any, is certain to be substantially less than the figure provided by plaintiff.

**VII.   REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)**

   **A.   Date of Rule 26(f) Meeting.**

   The initial Rule 26(f) meeting was held on March 2, 2016.

   **B.   Names of each participant and party he or she represented.**

   The participants in the meeting were as follows:

   For Plaintiff: James E. Miller, Laurie Rubinow, Nathan Zipperian and Kolin Tang.

   For Defendants: Joel S. Feldman and Mark B. Blocker.

   **C.   Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

   The Rule 26(a)(1) disclosures will be made by April 18, 2016.

   **D.   Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

   None.

   **E.   Statement concerning any agreements to conduct informal discovery.**

   Although the parties have agreed to stage discovery in order to efficiently address the ESI production in this case, as described below, no agreements have been reached to conduct informal discovery at this time.

   **F.   Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

   Other than the agreements outlined below in Section "G," no other agreements have been reached at this time.   The parties will cooperate in good faith throughout the litigation to reach agreements and/or procedures to reduce discovery and other litigation costs.

G.     **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

1.   Preservation of ESI. Plaintiff and Empower Retirement have taken steps to preserve ESI through document hold notices to appropriate custodians.

2.   Discovery of ESI.   To the extent it exists, relevant, non-privileged ESI will be produced in native format or TIFF format with standard metadata fields and standard load files to enable the parties to exchange discoverable information without undue burden or costs. The parties will discuss appropriate methods to reduce the costs of production of ESI, including, but not limited to, predictive coding. To achieve the schedule set out in this Order, the parties agree that each side will search the ESI of a reasonable number of custodians to be determined, apply a reasonable number of search terms, and will collect only ESI that was created, modified, or sent on or after January 1, 2010. The parties reserve the right to seek ESI created, modified, or sent before January 1, 2010 upon a showing of good cause for said ESI.

3.   Asserting Privilege or Protection.   To reduce the costs of producing privilege logs, the parties agree to the following protocol: each side will produce an Excel spreadsheet listing their privileged documents that contains only as much non-privileged metadata as is reasonably available for each document (*e.g.*, to/from, date, subject line), but the parties will not be required to review each document individually and provide a separate substantive description of its content. The party receiving such a spreadsheet may request further information about a reasonable number of specific documents. At that point, the party producing the log will review those documents and provide a further description of the content.

In addition, the parties agree that they are not required to log: (1) documents dated after the filing of the complaint in this action, or (2) communications to or from counsel of record in this action. The parties further agree that neither side need produce a redaction log.

4.   Privilege and Work Product. The parties agree in principle to a standard clawback agreement to address inadvertent production of privileged and/or work product documents. Production of documents in this case shall be without prejudice to and shall not waive any attorney client privilege and/or work product protection. The further specifics of the parties' agreement will be negotiated at a later time once discovery is further advanced.

9

**H.** **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties have discussed the possibility of settlement and have determined that settlement is not possible at this time.

## VIII.   CONSENT

The parties do not consent to the exercise of jurisdiction of a magistrate judge.

## IX.   DISCOVERY LIMITATIONS

The parties do not agree to adopt the presumptive limitations on discovery established in Fed. R. Civ. P. 30(a)(2)(A)(I) and 33(a)(1).

**A.** **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

Plaintiff and Defendants propose the presumptive limitation on depositions be increased to fifteen (15) per side, which shall not be exceeded without good cause shown. — *Including 25 Interrogatories per side   The experts*

**B.** **Limitations which any party proposes on the length of depositions.**

No deposition may exceed one day of seven hours without the agreement of all parties or leave of court. — *Per Deponent — Rule 30(b)(6) Deponents Limited to a total of 7 hours.*

**C.** **Limitations which any party proposes on the number of requests for production and/or requests for admission.**

Each side may serve no more than 30 requests for production and 30 requests for admission, absent agreement of the parties or leave of Court.

**D.** **Other Planning or Discovery Orders.**

The parties shall submit an agreed proposed protective order to the court by April 18, 2016. The parties' proposed protective order will comply with the Court's instructions in *Gillard v. Boulder Valley School District*, Case No. 00-B-0021 (D. Colo. Sept. 11, 2000).

10

## X.   CASE PLAN AND SCHEDULE

### A.   Deadline for Joinder of Parties and Amendment of Pleadings.

Absent a showing of good cause, the deadline to amend pleadings/add parties is

~~November 18, 2016.~~ MAy 31, 2016

### B.   Discovery Cut-off. — November 30, 2016

~~Discovery may commence immediately after April 18, 2016 and all discovery shall be completed on or before March 31, 2017.  Although discovery will not be bifurcated, the parties have agreed to phase discovery in order to conduct discovery in an efficient manner and with an eye toward reducing the costs of ESI discovery. Plaintiff and Defendant have agreed that, in the initial phase of discovery, which will last through September 16, 2016, discovery shall be limited to the following areas:~~

   1.   Production of documents regarding communications between Plaintiff and Defendants;

   2.   Production of all documents in Defendants' possession regarding Plaintiff;

   3.   Production of all documents in Plaintiff's possession regarding Defendants;

   4.   Production of all agreements between Defendants and all documents explaining or memorializing the nature of the relationship between Defendants;

   5.   Production of revenue sharing agreements/participation agreements between Defendants and mutual fund complexes offered to ERISA 401(k) plans (or similar agreements requiring the payment of revenue sharing);

   6.   Production of documents providing Defendants' forms of basic ERISA 401(k) prototype plan documents, group annuity contracts/group funding agreements and

11

administrative services agreements;

7.      Production of documents in which Defendants assert that they disclosed the receipt of "revenue sharing payments";

8.      Production of readily accessible and generally applicable policies or guidelines for handling of funds under the separate accounts available under the group annuity contracts/group funding agreements sold to 401(k) plan sponsors of plans subject to ERISA; and

9.      Production of all sub-advisory agreements between Defendants and any related parties and production of all documents relating to the investment of 401(k) or other retirement assets in proprietary, managed and/or sub-advised funds.

10.     The parties shall meet, confer and reach agreement to the extent possible on or before ~~September 16, 2016~~ *May 4, 2016* regarding the electronic databases of Defendant to be searched, the custodians to be searched and the search terms to be utilized in the event that electronic discovery proves necessary.

11.     The parties shall meet and confer ~~between April 18, 2016 and June 17,~~ *by April 25, 2016, regarding* ~~2016 to discuss the initial witnesses to be deposed, any depositions under Fed.R.Civ.P. 30(b)(6)~~ *Depositor* ~~to be taken, and the timing and sequence of such deposition to occur after June 17, 2016.~~ *June 17, 2016*

12.     Plaintiff shall file its motion for class certification on or before ~~(October 14, 2016,~~ and any expert report(s) in support of class certification will be produced at that time.

13.     Defendants shall file their opposition to class certification on or before ~~December 2,~~ *July 29,* 2016, and any expert report(s) in opposition to class certification will be produced at that time.

14.     Plaintiff shall file any reply brief in support of class certification on or before ~~December 22, 2016~~ *August 22, 2016* and any rebuttal expert report(s) in further support of class

certification and/or in response to Defendants' expert(s) will be produced at that time.

*Judge Blackburn may set A*

15. ~~The Court shall schedule a hearing regarding class certification on or after~~ *Hearing on Class Certification.*

~~January 15, 2017.~~

### C. Dispositive Motion Deadline.

*December 30, 2016*

1. The parties shall file any dispositive motions on or before ~~June 16, 2017.~~

2. ~~Any opposition in response to a dispositive motion shall be filed within thirty (30) days of the filing of any dispositive motion.~~

3. ~~Any reply brief in support of a dispositive motion shall be filed within fourteen (14) days of the filing of any opposition brief.~~

### D. Expert Witness Disclosure — *Industry And Damages Expert — Two Experts Per Side*

1. Plaintiff will produce any merits-related expert reports on or before ~~May 15, 2017.~~ *September 1, 2016*

2. Defendants will produce any rebuttal or merits-related expert reports on or before ~~June 16, 2017.~~ *October 3, 2016*

3. Plaintiff will produce any rebuttal expert reports on or before ~~July 14, 2017.~~ *November 14, 2016*

4. In all instances, the parties agree to cooperate in order to make their respective expert and other witness(es) available for examination at the earliest possible time, and in consideration of the opposing party's need to incorporate the results of such examination in any opposition memoranda or reply briefs. *Experts shall be Disclosed Consistent with Fed R. Civ P 26(a)(2)(B)*

**E.      Identification of Persons to Be Deposed:**

Plaintiff currently anticipates taking depositions of Defendants pursuant to Fed.R.Civ.P.

30(b)(6) with respect to Empower Retirement's retirement business, its group annuity contracts

and group funding agreements, its operation of separate accounts, its policies and procedures

with respect to revenue sharing payments and pricing of its products, its participation agreements

with mutual fund complexes and its sub-advised, managed or other proprietary funds.   Plaintiff

anticipates that such depositions can be completed in a period of three to five days.

Defendants anticipate taking depositions of plaintiff, as well as certain persons or

individuals associated with the plan, including but not limited to any advisers to the plan and the

individuals from the plan sponsor.   Defendants cannot anticipate the total time needed to take

such depositions until it learns more about the identities of such individuals.

The parties will cooperate in good faith to schedule all additional, necessary depositions

in a manner to ensure that discovery is completed in an expedited and efficient manner.   All

depositions will be completed on or before the discovery cut-off date and the parties will comply

with the notice and scheduling requirements set for in Local Civil Rule 30.1.

**F.      Deadline for Interrogatories:**   Served by October 28, 2016

~~The parties will serve interrogatories on opposing counsel on a schedule that allows~~

~~timely responses on or before the discovery cut-off date.   The parties will not serve any~~

~~interrogatories after March 1, 2017.~~

**G.      Deadline for Requests for Production of Documents and/or Admissions:**

Served by October 28, 2016

~~The parties will serve all document requests and requests for admission on opposing~~

~~counsel on a schedule that allows timely responses on or before the discovery cut-off date.   The~~

~~parties will not serve any such discovery requests after March 1, 2017.~~

14

## XI.   DATES FOR FURTHER CONFERENCES

A.   Status conferences will be held in this case at the following dates and times:

*None set*

~~[to be completed by the Magistrate Judge]~~ *and*

B.   A final pretrial conference *Trial Preparation Conference* will be held in this case on *MAy 3, 2017* at *10:00* o'clock *A.* m. *mountain Time* A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## XII.   OTHER SCHEDULING MATTERS

The parties anticipate that the trial of this case can be completed in ~~10~~ 15 ~~full trial days.~~ *Days to the Court.*

*Trial to the Court set on MAy 8, 2017 At 9:00 Am, For 15 Days. First 3 Weeks*

## XIII.   NOTICE TO COUNSEL AND PRO SE PARTIES

*1) Trial Mon. - Thurs. - 4 week 2) Trial Tues. - Thurs. -*

A.   The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

B.   Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

C.   With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

D.   In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

15

E.      In addition to filing an appropriate notice with the clerk's office, counsel must file

a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of

counsel's address or telephone number with the clerk of the magistrate judge assigned to this

case.

## XIV.   AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 4ᵀᴴ day of April, 2016.

BY THE COURT:

The Honorable Michael J. Watanabe
United States Magistrate Judge

APPROVED:

/s/ James E. Miller
James E. Miller
Laurie Rubinow
SHEPHERD FINKELMAN MILLER
    & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile:   (866) 300-7367
Email: jmiller@sfmslaw.com
            lrubinow@sfmslaw.com

Ronald S. Kravitz
Kolin C. Tang
SHEPHERD FINKELMAN MILLER
    & SHAH, LLP
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 429-5272
Facsimile:   (866) 300-7367
Email: rkravitz@sfmslaw.com
            ktang@sfmslaw.com

Nathan Zipperian
SHEPHERD FINKELMAN MILLER
    & SHAH, LLP
1625 N. Commerce Pkwy Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile:   (866) 300-7367
Email: nzipperian@sfmslaw.com

Sahag Majarian
LAW OFFICES OF SAHAG MAJARIAN
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone: (818) 609-0807
Facsimile:   (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff

17

/s/ Joel S. Feldman
Joel S. Feldman
Mark B. Blocker
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-2030
Facsimile: (312) 853-7036
Email: jfeldman@sidley.com
        mblocker@sidley.com

Edward C. Stewart, #23834
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879
Email: stewart@wtotrial.com

Attorneys for Defendants

18

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and that such filing will accomplish service upon all counsel of record.

/s/Laurie Rubinow
Laurie Rubinow
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP